UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

_____
                                                        )
ENVIRONMENT TEXAS CITIZEN LOBBY, INC., )
and SIERRA CLUB,                                 )
                                                        )
                        Plaintiffs,                )          Civil Action No.
                                                        )
            v.                                           )
                                                        )
CHEVRON PHILLIPS CHEMICAL        )
COMPANY, LP,                               )
                                                        )
                        Defendant.                )
_____)

## COMPLAINT

## STATEMENT OF THE CASE

1.  This is a citizen suit to enforce the Clean Air Act, brought pursuant to section

304(a) of the Clean Air Act ("CAA" or "the Act"), 42 U.SC. § 7604(a), for defendant

Chevron Phillips Chemical Company, LP's ("Chevron Phillips") violations of air

pollution emission limits designed to protect human health and the environment.

Plaintiffs are citizen groups with members who live in the vicinity of the chemical plant

owned and operated by Chevron Phillips in Baytown, Texas, which is called the Cedar

Bayou Plant (sometimes referred to here as "the Plant").

2.  The Cedar Bayou Plant is a 1,200-acre industrial complex located alongside

Interstate 10, about 25 miles east of Houston.  It is the largest manufacturing facility

owned by Chevron Phillips.  The Cedar Bayou Plant manufactures ethylene and

propylene from light hydrocarbons, natural gas liquids, and refinery feedstocks, and

upgrades its ethylene products into alpha olefins and polyethylene resins.  End-use

applications for these chemicals include greases, lubricants, coatings, adhesives, plastics, fibers, paints, detergents and antifreeze.  The Plant consists of eight process units: olefins, alpha olefins (two units), polyalphaolefins, polyethylene (three units), and acetylene black, plus central utilities and support facilities.  According to emissions data collected by the State of Texas in 2006, the Cedar Bayou Plant is one of the largest sources of air emissions among the 275 industrial plants in Harris County.  In 2006 the Plant ranked among the top 20 of that group for emissions of each of a number of different air pollutants (including volatile organic compounds, carbon monoxide, and nitrogen oxides), and was one of the ten largest sources of air pollutants from among Harris County's 95 chemical plants.  Nearly 23,000 people live within five miles of the Plant.

3.  Chevron Phillips is in violation of the Act because it emits tens of thousands to hundreds of thousands of pounds of pollutants into the atmosphere each year from the Cedar Bayou Plant over and above the amounts it is legally allowed to emit under federal and state regulations and under Clean Air Act permits issued by the State of Texas. These pollutants, and some of their harmful effects, include:  benzene and 1,3-butadiene, which are carcinogens; and volatile organic compounds ("VOCs"), carbon monoxide, and nitrogen oxides ("NOx"), which contribute to the formation of ground-level ozone, a major constituent of smog.

4.  Chevron Phillips' violations of the Act pose a threat to public health and the environment.  The U.S. Environmental Protection Agency ("EPA") and the State of Texas have failed to take enforcement actions that have been sufficient to stop Chevron Phillips' violations of the Act.

## JURISDICTION, VENUE AND NOTICE

5.  This Court has jurisdiction over the subject matter of this action pursuant to section 304(a) of the Act, 33 U.S.C. § 7604(a), and pursuant to 28 U.S.C. § 1331.

6.  Venue lies in this District pursuant to section 304(c)(1) of the CAA, 42 U.S.C. § 7604(c)(1), because Chevron Phillips' Cedar Bayou Plant is a stationary source, or a collection of stationary sources, located within this District.

7.  Plaintiffs gave notice of the violations alleged in this Complaint more than 60 days prior to commencement of this lawsuit to (a) Chevron Phillips Chemical Company, LP, (b) EPA, (c) the Texas Commission on Environmental Quality ("TCEQ"), and (d) the Governor of Texas.  Notice was provided by a letter addressed to the President and Chief Executive Officer of Chevron Phillips Company, LP and Van Long, Cedar Bayou Plant Manager, dated June 12, 2009 (the "Notice Letter"), with copies sent to the Administrator of EPA, the Regional Administrator for EPA Region VI, the Director of TCEQ, the Governor, and the registered agent for Chevron Phillips Chemical Company, LP.  A copy of the Notice Letter is attached to this complaint as Exhibit A and incorporated by reference herein.  The Notice Letter satisfies the pre-suit notice requirement of Section 304(b) of the CAA, 42 U.S.C. § 7604(b).

## PARTIES

### Plaintiffs

8.  Plaintiffs are "persons" within the meaning of section 302(e) of the Act, 42 U.S.C. § 7602(e).  They sue on behalf of their individual members who are adversely affected by Chevron Phillips' excess emissions of nitrogen oxides, carbon monoxide, and volatile organic compounds (including, but not limited to, benzene and 1,3 butadiene),

and other air pollutants in violation of the Act.  These violations have deleterious impacts

on public health and the environment in the areas where Plaintiffs live, work and recreate.

9.  Plaintiff Environment Texas Citizen Lobby, Inc. ("Environment Texas") is a

Texas corporation.  It is a statewide, non-profit, environmental organization that

advocates for clean air, clean water, and preservation of Texas' natural areas, among

other issues, on behalf of approximately 5,000 citizen members from across the state of

Texas.  Among other things, Environment Texas researches and distributes analytical

reports on environmental issues, advocates before legislative and administrative bodies,

conducts public education, and pursues public interest litigation on behalf of its members.

10.  Plaintiff Sierra Club, a California non-profit corporation with an office in

Austin, is the nation's oldest and largest conservation organization, with approximately

700,000 members nationwide.  The Lone Star Chapter has approximately 24,000 Texas

members, including nearly 5,000 members in Harris County, who are dedicated to

exploring, enjoying, and protecting Texas' natural resources and wild places.  Sierra Club

promotes the responsible use of the earth's ecosystem and resources, and works to restore

the quality of the natural and human environment.  In addition to organizing nature

outings and public education campaigns, Sierra Club and its Texas members pursue

advocacy and litigation on issues including clean air and clean water, solid waste

reduction, and sustainable energy and land use policies.

11.  Environment Texas and Sierra Club each have individual members who live,

work, and recreate near the Cedar Bayou Plant, and who breathe and are otherwise

exposed to more harmful pollutants than they otherwise would be, as a direct result of the

Plant's excess air emissions that violate the Act.  These excess emissions of pollutants

have adverse impacts on these individuals' health, recreational, aesthetic, and other interests, as set forth more fully in paragraphs 51 through 65, below.

**Defendant**

12.  Chevron Phillips is Chevron Phillips Chemical Company LLC's wholly-owned, primary U.S. operating subsidiary.  Chevron Phillips Chemical Company LLC was formed when Chevron Corporation and Phillips Petroleum Company (now ConocoPhillips) combined most of their worldwide petrochemical businesses.  Chevron Phillips Chemical Company LP owns and operates the Cedar Bayou Plant.  At all times pertinent to this citizen suit, Chevron Phillips was an owner and operator of each unit that is the subject of the claims for relief in this complaint.

13.  Chevron Phillips is a "person" within the meaning of section 302(e) of the Act, 42 U.S.C. § 7602(e).

14.  In the year ended December 31, 2006, Chevron Phillips had net income of $1,040,000,000.00.  In the year ended December 31, 2007, Chevron Phillips had net income of $387,000,000.00.  In the year ended December 31, 2008, Chevron Phillips had net income of $103,000,000.00.  As of December 31, 2007, Chevron Phillips had $4,858,000,000.00 in total assets, and $1,652,000,000.00 in total liabilities.  As of December 31, 2008, Chevron Phillips had $4,702,000,000.00 in total assets, and $996,000,000.00 in total liabilities.

15.  Section 113(e)(1) of the Act, 42 U.S.C. § 7413(e)(1), provides that in assessing any penalty under 42 U.S.C. § 7604(a) (the citizen suit provision), "the size of the business" and "the impact of the penalty on the business," among other criteria, are to be considered by the Court.

## STATUTORY AND REGULATORY BACKGROUND

### Overview

16.  The Cedar Bayou Plant is subject to two independent types of air emission standards and limitations under the Clean Air Act.  One set of standards is designed to achieve and maintain compliance with National Ambient Air Quality Standards ("NAAQS"), which are established to protect human health and the environment.  These standards produce emission limitations on stationary sources that can vary based on local air quality conditions.  The second set of standards is industry-specific, technology-based emission standards and limitations developed and promulgated by EPA, and include the New Source Performance Standards ("NSPS") program and the National Emission Standards for Hazardous Air Pollutants ("NESHAP") program.  The NSPS and NESHAP programs establish national standards that do not take into account varying local air conditions.

17.  Both of these types of emission standards and limitations are incorporated into the Cedar Bayou Plant's state air emission permits issued pursuant to the Texas State Implementation Plan ("the Texas SIP"), and into the Plant's federal operating permits, issued pursuant to Title V of the Clean Air Act, 42 U.S.C. §§ 7661-7661f.

18.  Under the citizen suit provision of the Clean Air Act, 42 U.S.C. § 7604, citizens are authorized to bring suit in federal court to enforce emission standards and limitations contained in, *inter alia*:  permits issued pursuant to the Texas SIP; federal NSPS and NESHAP regulations; and Title V permits.

19.  The citizen suit provision of the Act grants jurisdiction to United States District Courts to issue an injunction remedying violations of the Act, to impose appropriate civil penalties for violations of the Act, and to award costs of litigation (including reasonable attorney and expert witness fees).

**The Cedar Bayou Plant's SIP-Based Emission Limits**

20.  Pursuant to section 109 of the Act, 42 U.S.C. § 7409, EPA has established National Ambient Air Quality Standards ("NAAQS") to protect human health and the environment for six "criteria pollutants," including nitrogen dioxide, carbon monoxide, and ozone.  40 C.F.R. Part 50.

21.  Under section 110(a) of the Act, 42 U.S.C. § 7410(a), states implement many of the regulatory requirements of the Act through State Implementation Plans.  SIP provisions must satisfy the requirements of the Act before they are approved by EPA.  42 U.S.C. § 7410(k).

22.  In general, SIPs consist of state laws, regulations, and permits, and must provide for attainment and maintenance of the NAAQS in each region of the state.  Once approved by EPA, SIPs become federal law and are enforceable by the state, EPA, and citizens.  All periods of air emissions in excess of applicable SIP limitations, including emission limitations contained in permits issued pursuant to the SIP to stationary sources of air pollution, are violations of the Act.

23.  EPA has approved the Texas SIP.  Pursuant to the Texas SIP, the TCEQ has issued permits to Chevron Phillips that, among other things, (i) set forth the pollutants that may legally be emitted from stationary sources of air pollution at the Plant, and (ii)

impose both hourly (pounds per hour) and annual (tons per year) limits on the emission of such pollutants. See 30 Tex. Admin. Code Chapter 116.

24. Most of the emission limits at issue in this action are set forth in New Source Review ("NSR") permits, which are authorized by Part D of Subchapter I of the Act, 42 U.S.C. §§ 7501-7515 (the NSR program), and by 30 Tex. Admin. Code Chapter 116. Chevron Phillips is also subject to: Prevention of Significant Deterioration ("PSD") requirements, which are authorized by Part C of Subchapter I of the Act, 42 U.S.C. §§ 7474-7492 (the PSD program); a regulation governing emissions of highly reactive volatile organic compounds (the "HRVOC Rule"), which is authorized by 30 Tex. Admin. Code Chapter 115; and other emission limitations contained in the Texas SIP.

25. The Cedar Bayou Plant's SIP-based permits contain, among other provisions, numerical emission limits for permitted pollutants. These numerical limits are typically set forth in Maximum Allowable Emission Rate Tables ("MAERTs") in each permit. Compliance with the numerical limits in the MAERTs is mandatory. Texas Health & Safety Code § 382.085(b); 30 Tex. Admin. Code § 116.115(b)(2)(F). The Plant's SIP-based permits also limit fugitive emissions to zero. A "fugitive emission" is defined in the Texas Administrative Code as: "Any gaseous or particulate contaminant entering the atmosphere that could not reasonably pass through a stack, chimney, vent or other functionally equivalent opening designed to direct or control its flow." 30 Tex. Admin. Code § 101.1(39). The Plant's SIP-based permits also limit emissions from certain maintenance, startup and shutdown activities to zero.

26. The Texas SIP provides that when more than one state or federal rule or regulation or permit condition is applicable to a holder of an NSR permit, the most

stringent of those limits or conditions governs and is the standard by which compliance is
determined.  30 Tex. Admin. Code § 116.115(b)(2)(H)(ii).

**The Cedar Bayou Plant's NSPS-Based Emission Limits**

27.  The Cedar Bayou Plant contains stationary sources of air pollution that are
"new sources" within the meaning of Section 111(a)(2) of the Clean Air Act, 42 U.S.C. §
7411(a)(2), and are "affected facilities" within the meaning of 40 C.F.R. § 60.2.
Accordingly, these sources are subject to New Source Performance Standards ("NSPS").
The NSPS consist of industry-specific, technology-based emission standards and
limitations developed and promulgated by EPA pursuant to Section 111 of the Act, 42
U.S.C. § 7411.

28.  Pursuant to Section 111(b), 42 U.S.C. § 7411(b), EPA has promulgated
general NSPS provisions, codified at 40 C.F.R. Part 60, Subpart A, §§ 60.1-60.19, that
apply to owners or operators of any stationary source that contains an "affected facility"
subject to regulation under 40 C.F.R. Part 60.  40 C.F.R. § 60.11(d) requires that at all
times - including periods of startup, shutdown, and malfunction - owners and operators
shall, to the extent practicable, maintain and operate any affected facility, including
associated air pollution control equipment, in a manner consistent with good air pollution
control practice for minimizing emissions.  40 C.F.R. § 60.18(c) requires that flares used
to comply with applicable subparts of 40 C.F.R. Parts 60 and 61 be operated with the
presence of a flame at all times.

29.  Section 111(e), 42 U.S.C. § 7411(e), prohibits the operation of any new
source in violation of an NSPS applicable to such source.  Thus, a violation of an NSPS
is a violation of Section 111(e) of the Clean Air Act.

**The Cedar Bayou Plant's NESHAP-Based Limits**

30.  Stationary sources at the Cedar Bayou Plant are subject to national emission standards for hazardous air pollutants ("NESHAPs") promulgated by EPA pursuant to Section 112(d) of the Act, 42 U.S.C. § 7412(d).  Pursuant to Section 112(d), EPA promulgated general NESHAPs provisions, codified at 40 C.F.R. Part 61, Subpart A, §§ 61.1-61.19, that apply to owners and operators of any stationary source for which a NESHAP is prescribed.  40 C.F.R. § 61.12(c) requires that owners and operators shall maintain and operate the source, including associated air pollution control equipment, in a manner consistent with good air pollution control practice for minimizing emissions.

31.  A violation of a NESHAP regulation is a violation of the Clean Air Act.

**The Cedar Bayou Plant's Title V Permits**

32.  The Cedar Bayou Plant's SIP-based permits and the emission standards and limitations contained therein, as well as any other emission standards and limitations in the Texas SIP that are applicable to the Plant such as the HRVOC Rule, have been incorporated into federal operating permits issued to Chevron Phillips pursuant to Title V of the Clean Air Act, 41 U.S.C. § 7661-7661f.

33.  The NSPS and NESHAP requirements applicable to Chevron Phillips have also been incorporated into Chevron Phillips' Title V federal operating permits.

34.  Any release of air pollutants into the atmosphere in excess of an hourly or annual emission limit contained in any of Chevron Phillips' SIP-based permits, or in violation of NSPS or NESHAP requirements, or in excess of any other air emission standard or limitation applicable to Chevron Phillips, is a violation of the Title V permit issued to the unit from which the pollutants were released.

## EMISSION EVENTS AT THE CEDAR BAYOU PLANT

35.  The Texas SIP requires Chevron Phillips to report certain unauthorized emissions of air pollutants from the Cedar Bayou Plant to the TCEQ within 24 hours of their discovery.  30 Tex. Admin. Code §§ 101.201(a) and 101.211(a).  Thereafter, Chevron Phillips has two weeks to issue a "final" report concerning such "emission events"; if no final report is submitted, the initial report is considered final.  30 Tex. Admin. §§ 101.201(b) and (c) and 101.211(b) and (c).  These emission event reports submitted by Chevron Phillips to TCEQ must include, among other information:  the date, time, and duration of the event; the nature and cause of the event; any corrective action taken; the unit and the specific emission point from which pollutants were emitted to the atmosphere; the permit or regulation applicable to the unit and emission point; the emission standard or limitation that has been exceeded; and the type and estimated quantities of air pollutants emitted.  Chevron Phillips reports this information to TCEQ using the State of Texas Environmental Electronic Reporting System ("STEERS").

36.  Repeatedly over a period of years, Chevron Phillips has reported to TCEQ, pursuant to the procedure described in the preceding paragraph, that air pollutants have been released to the atmosphere from the Cedar Bayou Plant during "emission events," as defined at 30 Tex. Admin. Code § 101.1.  Emission events include such incidents as equipment breakdowns or malfunctions, unscheduled maintenance, startup, and shutdown activities, and other non-routine air emissions.

37.  Attached as Exhibit B to this Complaint are reports generated by STEERS from information submitted to TCEQ by Chevron Phillips for the Cedar Bayou Plant. These reports are available to the public on the TCEQ website.  Violations of the Clean

Air Act that occurred prior to the five-year statute of limitations period (which begins on June 12, 2004) are relevant to the fashioning of injunctive relief and to the determination of an appropriate civil penalty. Section 113(e)(1) of the Act, 42 U.S.C. § 7413(e)(1), provides that in assessing any penalty under 42 U.S.C. § 7604(a) (the citizen suit provision), "the violator's full compliance history," among other criteria, is to be considered by the Court.

38. Chevron Phillips has released air pollutants during emission events at the Cedar Bayou Plant in amounts that exceeded one or more applicable hourly emission limits in the Plant's SIP-based permits and/or that exceeded applicable emission limitations in regulations that are a part of the Texas SIP.

39. A list of instances, during the period from February 2003 through May 2009, in which Chevron Phillips emitted pollutants from the Cedar Bayou Plant in excess of an applicable hourly emission, is contained in Table 1 of the Notice Letter (Exhibit A to this Complaint). Chevron Phillips reported each of these emission events to TCEQ.

40. Pollutants have been released during emission events at the Cedar Bayou Plant in amounts that exceeded annual emission limitations contained in the Plant's SIP-based permits. Annual emission limits, expressed in tons per year, are calculated on a rolling 12-month basis. Since 2003, the Plant exceeded its annual emission limits on at least 175 occasions.

41. A list of the rolling 12-month periods since 2003 during which Chevron Phillips emitted pollutants from the Cedar Bayou Plant in excess of an applicable annual emission limit is contained in Table 2 of the Notice Letter. Chevron Phillips reported to TCEQ the information on which this table is based.

42.  On numerous occasions, emission events at the Cedar Bayou Plant resulted in fugitive emissions of pollutants in violation of the Plant's SIP-based permits, which do not authorize fugitive emissions in any amount.

43.  A list of instances, during the period February 2003 through May 2009, in which Chevron Phillips emitted unauthorized fugitive pollutants from the Cedar Bayou Plant is contained in Table 1 to the Notice Letter.  Fugitive emissions are identified in the column titled "Emission Point".  Chevron Phillips reported each of these emissions to TCEQ.

44.  Pollutants have been released during emission events at the Cedar Bayou Plant in amounts that exceeded the hourly, site-wide HRVOC emission limit in the Cedar Bayou Plant's SIP-based permits.

45.  A list of instances, during the period February 2003 through May 2009, in which Chevron Phillips emitted pollutants from the Cedar Bayou Plant in excess of the hourly HRVOC emission limit is contained in Table 3 of the Notice Letter.  Chevron Phillips reported each of these emission events to TCEQ.

46.  Special Condition 3 of NSR Permit Nos. 1504A and 37063 authorize emissions only from the specified maintenance, startup, or shutdown activities at the specified emission points described in each permit condition.  Special Condition 3 of Permit Nos. 1504A and 37063 provide further that any maintenance, start-up, or shutdown activities not specifically listed "are not authorized by this permit".  The applicable emission limit for any such non-listed maintenance, startup, or shutdown activities at the units covered by these permits is zero pounds per hour.  Special Condition 10 of Permit No. 2462C authorizes emissions only from the specified

maintenance, startup, or shutdown activities at the specified emission points described in the permit condition.  The applicable emission limit for any unspecified maintenance, startup, or shutdown activity, and for any maintenance, startup or shutdown activity from an unspecified emission point, is zero pounds per hour.  On numerous occasions, pollutants have been released from the Cedar Bayou Plant in excess of the zero pounds per hour limit for unauthorized maintenance, startup, or shutdown activity.

47.  A list of instances, during the period February 2003 through May 2009, in which Chevron Phillips emitted pollutants from the Cedar Bayou Plant in excess of the zero pounds per hour emission limit for unauthorized maintenance, startup, or shutdown activity is contained in Table 4 of the Notice Letter.  Chevron Phillips reported each of these events to TCEQ, although the reports contained an incorrect emission limit applicable to these events in violation of 30 Tex. Admin. Code §§ 101.201(b)(1)(H) or 101.211(a)(1)(I) and (b)(1)(I).

48.  On January 15, 2005, September 21, 2005, January 19, 2006, January 22, 2006, January 23, 2006, April 28, 2006, May 28, 2006, and September 13, 2008, the Cedar Bayou Plant emitted pollutants from a flare that was operating without a flame.

49.  Chevron Phillips reported to TCEQ that it released more than 400,000 pounds of volatile organic compounds during emission events at the Cedar Bayou Plant in 2008, more than in any of the five previous years.  During the period 2003 through June 2009, Chevron Phillips released more than 765,000 pounds of volatile organic compounds, over 310,000 pounds of carbon monoxide, over 45,000 pounds of nitrogen oxides, over 18,000 pounds of 1,3-butadiene, and over 17,000 pounds of benzene from the Plant during emission events.

50.  After the Notice Letter was sent, Chevron Phillips continued to release air pollutants during emission events at the Cedar Bayou Plant that exceeded applicable emission limitations.  Plaintiffs are unaware of changes made to the operation or design of the Plant that would prevent violations of this nature from continuing in the future.

### AIR POLLUTION FROM THE CEDAR BAYOU PLANT IS HARMFUL

51.  Exposure to air pollution is associated with numerous effects on human health, including pulmonary, cardiac, vascular, and neurological impairments.  Acute effects are usually immediate and often reversible when exposure to the pollutant ends.  Some acute health effects include eye irritation, headaches, and nausea.  Chronic effects are usually not immediate and tend not to be reversible when exposure to the pollutant ends.  Some chronic health effects include decreased lung capacity and lung cancer resulting from long-term exposure to toxic air pollutants.  A large population is at risk from ozone and other air pollutants in the Houston metropolitan statistical area.  Based on estimates in the American Lung Association's 2009 State of the Air report, the Houston area has a population of 5,729,027.  Of that population, the following groups are considered at increased risk from exposure to air pollutants:  1,612,940 children, of whom 146,633 suffer from asthma; 469,062 adults over the age of 65; 337,275 adults with asthma; 133,968 people with chronic bronchitis; and 59,157 people with emphysema.

52.  Since the beginning of 2003, Chevron Phillips has emitted more than one million pounds of air pollutants during emission events at the Cedar Bayou Plant.  According to Chevron Phillips' emission event reports to TCEQ, average annual air emissions resulting from emission events at the Plant include approximately:  118,000

pounds of volatile organic compounds, including over 50,000 pounds of ethylene and 35,000 pounds of propylene, which are highly reactive VOCs; 48,000 pounds of carbon monoxide; 6,900 pounds of nitrogen oxides; 2,900 pounds of 1,3-butadiene; and 2,650 pounds of benzene, among other pollutants. Chevron Phillips' emission event reports to TCEQ show that pollutants classified as "hazardous air pollutants" under Section 112 of the Act - including 1,3-butadiene, benzene, and hexane - are emitted from the Plant during emission events.

53. As a result of the Clean Air Act violations alleged herein, the Cedar Bayou Plant has emitted and continues to emit significant excess quantities of nitrogen oxides, VOCs (including benzene and 1,3-butadiene), and carbon monoxide. These pollutants, alone and in combination, can cause public health and environmental problems.

54. Under Section 107(d) of the Act, 42 U.S.C. § 7407(d), each state must designate those areas within its boundaries where the air quality is better or worse than the NAAQS for each criteria pollutant, or where the air quality cannot be classified because of insufficient data. An area that meets the NAAQS for a particular criteria pollutant is an "attainment" area for that pollutant. An area that does not meet the NAAQS for a particular criteria pollutant is a "non-attainment" area for that pollutant.

55. At all times relevant to this citizen suit, the State of Texas has designated the eight-county "Houston-Galveston-Brazoria area" (or "HGB area") as a non-attainment area for ozone. The HGB area includes Harris County, in which the Plant is located, as well as Galveston, Brazoria, Chambers, Fort Bend, Montgomery, Waller and Liberty counties. Since before 2004, the Houston area has consistently ranked among the very worst in the United States for non-compliance with EPA's ambient ozone standards.

Houston and Harris County consistently contain the highest ozone levels among the eight counties in the HGB area because of the unusually high concentration of large industrial plants along the Houston Ship Channel, including the Cedar Bayou Plant, that emit large volumes of smog-forming ozone precursors.

56.   Many of the pollutants illegally emitted from the Cedar Bayou Plant, such as VOCs, carbon monoxide, and NOx, are precursors that contribute to the formation of ground-level ozone, a primary component of smog.  TCEQ has determined that certain "highly reactive VOCs" ("HRVOCs") – ethylene, propylene, 1,3-butadiene, and butenes – play a particularly significant role in ground-level ozone formation in the Houston-Galveston-Brazoria area.  The vast majority of VOCs illegally emitted from the Cedar Bayou Plant are HRVOCs.  High levels of ground-level ozone can be created many miles away when winds carry industrial emissions far from their original source.  Ozone can cause several types of short-term health effects, including:  (a) irritation of the respiratory system, which can lead to coughing, irritation of the throat, and an uncomfortable sensation in the chest; and (b) reduced lung function, which means that it is more difficult to breathe as deeply and vigorously as normal.  Ozone can aggravate asthma and inflame and damage the lining of the lungs.  Children are among the subpopulations most vulnerable to ground level ozone and other air pollutants because:  they breathe more rapidly than do adults (a resting infant, for example, inhales twice as much air, relative to size, as does a resting adult); they spend more time outdoors, particularly in summer when ozone and other pollution levels are generally highest; they are more active while outdoors than adults, spending three times as much time engaged in sports and other vigorous activities that raise breathing rates, causing them to inhale more air pollutants

per pound of body weight; their airways are narrower than those of adults, thus enhancing

the inflammatory effects of air pollution; their lungs are still developing and growing,

making them more physiologically sensitive to air pollution; and, generally, they are less

aware than adults of high ozone warnings.

57.    Some of the pollutants illegally emitted from the Plant, such as NOx,

contribute to the formation of acid rain.  Acid rain damages forests and crops, changes

the makeup of soil, and makes lakes and streams acidic and unsuitable for fish.

Continued exposure to acid rain over a long time changes the natural variety of plants and

animals in an ecosystem.

58.    Nitrogen oxides react with ammonia, moisture, and other compounds to form

nitric acid and related particles.  Human health concerns from these particles include

effects on breathing and the respiratory system, damage to lung tissue, and premature

death.  Small particles penetrate deeply into sensitive parts of the lung tissue and can

cause or worsen respiratory disease such as emphysema and bronchitis, and aggravate

existing heart disease.  In the air, NOx reacts readily with common organic chemicals and

even ozone, to form a wide variety of toxic products, some of which may cause

biological mutations.

59.    Two of the VOCs emitted the Cedar Bayou Plant, benzene and 1,3-butadiene,

are carcinogens.  A study by researchers at the University of Texas School of Public

Health found elevated rates of leukemia among children living within two miles of the

Houston Ship Channel and among children living in areas with elevated ambient levels of

1,3-butadiene.  Children are particularly vulnerable to toxic substances because their

bodies are immature and rapidly growing.  Children do not have a fully developed

18

immune system, liver, or kidneys to help protect them from the damaging effects of many chemicals. Immature lungs are unable to remove or neutralize contaminants adequately, and developing brains and neural pathways are particularly vulnerable to toxins. In addition, airborne carcinogens and mutagens appear to have a greater effect on children, possibly because rapidly growing tissues are less differentiated and more "suggestible" than mature tissues. Children exposed to carcinogens also have a longer expected life span over which carcinogenic action may occur. Children of parents exposed to toxic chemicals appear to have a higher incidence of cancer, possibly because they inherit damaged genetic material; additional exposure may then precipitate malignancy in these genetically susceptible children.

60. Carbon monoxide, which is emitted from the Cedar Bayou Plant, is an odorless, colorless gas that is formed when carbon in fuels is not burned completely. Carbon monoxide contributes to the formation of smog. For a person with heart disease, a single exposure to CO at low levels may cause chest pain and reduce that person's ability to exercise; repeated exposures may contribute to other cardiovascular effects. Low concentrations of CO can cause fatigue in healthy people.

61. As a direct result of Chevron Phillips' violations of the Act associated with emissions of air pollutants in excess of applicable emission limitations, individual members of each plaintiff organization who live in the vicinity of and downwind of the Cedar Bayou Plant are exposed to higher levels of a variety of pollutants, including VOCs (including benzene and 1,3-butadiene), NOx, and carbon monoxide and the ozone that is formed as a result of the emissions of these pollutants. As a result, they are more

likely to suffer the adverse health and environmental impacts described in paragraphs 51 through 60, above.

62.  The Cedar Bayou Plant's illegal emissions contribute to degraded air quality near the plant and elsewhere in Harris County.  Air quality is so poor that Plantiffs' members experience coughing, sore throats, muscle aches, fatigue, headaches, congestion, and burning eyes, and notice that these symptoms typically disappear when they travel elsewhere, beyond the Houston-Galveston-Brazoria area.  Plaintiffs' members do not want the air quality where they live to be as bad as it is.  In addition, the occurrence of emission events at the Cedar Bayou Plant increases the possibility of an explosion at the Plant.

63.  Plaintiffs' members are aware of the location of the Cedar Bayou Plant on Interstate 10 relative to where they live, work, recreate, and travel, and are aware that emissions from the Plant can and do blow in their direction.  They can see flares, particularly at night, and other visual evidence of emissions when driving past the Plant. Smoking flares can be visible during the day from several miles away.  Plaintiffs' members breathe pollutants emitted from the Cedar Bayou Plant although they do not want to.  Plaintiffs' members are aware of the emission event that occurred at the Cedar Bayou Plant on October 7, 1999, in which a plume of volatile organic compounds released from the Plant moved westward over many miles, and contributed to a series of extreme ozone levels that were detected by air monitors located all along the Houston Ship Channel and in the City of Houston itself.

64.  Plaintiffs' members breathe air pollutants emitted both legally and illegally from the Cedar Bayou Plant.  Plaintiffs' members want to breathe as little air pollution

from the Cedar Bayou Plant as possible, and certainly do not want to breathe pollutants that are emitted illegally.  Plaintiffs also do not want to live, work, recreate, or travel near a plant with an increased risk of explosion due to illegal emissions and to the equipment malfunctions that are the cause of many of Chevron Phillips' illegal emissions.

65.  Health, environmental, recreational, aesthetic, and other interests of these individuals are impaired by Chevron Phillips' illegal actions and will continue to be impaired without an appropriate order of this Court.

### FIRST CLAIM FOR RELIEF:  Violations of SIP-Based Permits and the Texas SIP

66.  Paragraphs 1 through 65 are realleged and incorporated by reference herein.

67.  Chevron Phillips must comply with emission standards and limitations in permits and regulations issued pursuant to the Texas SIP and which are applicable to stationary sources of air pollution at the Cedar Bayou Plant.

68.  SIP-based emission limitations applicable to the Cedar Bayou Plant are contained in various permits issued to Chevron Phillips by the TCEQ.  These permits include Permit Nos. 1504A, 37063, 2462C, 46305, 19027, and PSD-TX-748.  Each of these permits contains numerical limitations set forth in a Maximum Allowable Emission Rate Table ("MAERT").  In addition:  the permits require zero emissions from certain fugitive sources and from certain maintenance, startup, and shutdown activities; the state's 1,200-pound-per-hour facility-wide HRVOC limit applies to the Plant; and Chevron Phillips is required to accurately report applicable emission limits, if any, when reporting information under the STEERS system.

69.  Repeatedly and frequently since 2003, emissions from the Cedar Bayou Plant of volatile organic compounds, nitrogen oxides, and carbon monoxide, among other

pollutants, have exceeded the Plant's hourly and annual emission limits, the HRVOC Rule, and the zero emissions limits for certain fugitive emissions and certain maintenance, startup, and shutdown activities, contained in the Plant's SIP-based permits. Exceedances of these emission limits, based on Chevron Phillips' emission event reports submitted to TCEQ from February 2003 through May 2009, are listed in:  Table 1 (violations of hourly pounds per hour limits, including zero fugitive emission limits where "process fugitives" is identified under the "Emission Point" column); Table 2 (violations of annual tons per year limits); Table 3 (the facility-wide hourly HRVOC limit); and Table 4 (violations of zero emission limit for certain maintenance, startup, and shutdown activities).  The Cedar Bayou Plant has continued to emit pollutants in violation of SIP-based emission limits after May 2009.

70.  Each emission of a pollutant in violation of an emission limit contained in a SIP-based permit or in a regulation that is part of the Texas SIP is a separate violation of the Texas SIP.  A violation of an annual limit counts as 365 days of violation.  Each violation of the Texas SIP is a violation of the Act.

71.  Absent an appropriate order of this Court, Chevron Phillips will continue to emit volatile organic compounds, nitrogen oxides, and carbon monoxide, among other pollutants, in amounts that violate its SIP-based permits and the Texas SIP at the Cedar Bayou Plant.

72. As provided by sections 113(e) and 304(a) of the Act, 42 U.S.C. §§ 7413(e) and 7604(a), the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, and 40 C.F.R. § 19.4, the violations described above subject Chevron Phillips to

injunctive relief and civil penalties of up to $32,500 per day for each violation of the Act ($37,500 as of January 12, 2009).

**SECOND CLAIM FOR RELIEF: Violations of New Source Performance Standards**

73.  Paragraphs 1 through 72 are realleged and incorporated herein by reference.

74.  Repeatedly since February 2003, Chevron Phillips has released excessive amounts of volatile organic compounds, nitrogen oxides, and carbon monoxide, among other pollutants, from the Cedar Bayou Plant during emission events.  Each such incident constitutes a violation of the NSPS general requirement regarding good air pollution control practice for minimizing emissions, 40 C.F.R. § 60.11(d).

75.  Repeatedly since February 2003, Chevron Phillips has released highly reactive volatile organic compounds in amounts exceeding those allowed by the HRVOC Rule.  Each such violation of the HRVOC Rule constitutes a violation of the NSPS general requirement regarding good air pollution control practice for minimizing emissions, 40 C.F.R. § 60.11(d).

76.  Repeatedly since February 2003, Chevron Phillips operated flares at the Cedar Bayou Plant without a flame.  Each instance in which Chevron Phillips operated a flare without flame at the Plant constitutes a violation of the NSPS general requirement regarding proper operation of flares, 40 C.F.R. § 60.18(c).

77.  Each violation of an NSPS is a violation of the Act.

78.  Absent an appropriate order of this Court, Chevron Phillips will continue to emit volatile organic compounds, nitrogen oxides, and carbon monoxide, among other pollutants, in amounts that violate the NSPS general requirement regarding good air

pollution control practices, and will continue to operate its flares improperly in violation of NSPS requirements.

79. As provided by sections 113(e) and 304(a) of the Act, 42 U.S.C. §§ 7413(e) and 7604(a), the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, and 40 C.F.R. § 19.4, the violations describe above subject Chevron Phillips to injunctive relief and civil penalties of up to $32,500 per day for each violation of the Act ($37,500 as of January 12, 2009).

**THIRD CLAIM FOR RELIEF:  Violations of NESHAP-Based Limits**

80. Paragraphs 1 through 79 are realleged and incorporated by reference herein.

81. Repeatedly since February 2003, Chevron Phillips has released excessive amounts of hazardous air pollutants from the Cedar Bayou Plant during emission events. Each such incident constitutes a violation of the NESHAP general requirement regarding good air pollution control practice for minimizing emissions, 40 C.F.R. § 61.12(c).

82. Repeatedly since February 2003, Chevron Phillips has released highly reactive volatile organic compounds in amounts exceeding those allowed by the HRVOC Rule. Each such violation of the HRVOC Rule constitutes a violation of the NESHAP general requirement regarding good air pollution control practice for minimizing emissions, 40 C.F.R. § 61.12(c).

83. Repeatedly since February 2003, Chevron Phillips operated flares at the Plant without a flame. Each instance in which Chevron Phillips operated a flare at the Plant without a flame constitutes a violation of the NESHAP general requirement regarding good air pollution control practice for minimizing emissions, 40 C.F.R. § 61.12(c).

84. Each violation of a NESHAP is a violation of the Act.

85.  Absent an appropriate order of this Court, Chevron Phillips will continue to operate its flares, and will continue to emit volatile organic compounds, nitrogen oxides, and carbon monoxide, among other pollutants, in ways or in amounts that violate the NESHAP general requirement regarding good air pollution control practice for minimizing emissions.

86.  As provided by sections 113(e) and 304(a) of the Act, 42 U.S.C. §§ 7413(e) and 7604(a), the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, and 40 C.F.R. § 19.4, the violations describe above subject Chevron Phillips to injunctive relief and civil penalties of up to $32,500.00 per day for each violation of the Act ($37,500.00 as of January 12, 2009).

**FOURTH CLAIM FOR RELIEF:  Violations of Title V Operating Permits**

87.  Paragraphs 1 through 86 are realleged and incorporated by reference herein.

88.  Chevron Phillips must comply with the terms and conditions of federal operating permits issued pursuant to Title V of the Act.  Title V permits incorporate all emission standards and limitations applicable to a source, including SIP-based emission limits and NSPS and NESHAP requirements.

89.  Each violation of Chevron Phillips' SIP-based permits, the Texas SIP, and the NSPS and NESHAP regulations described in the First, Second and Third Claims for Relief, above, is a violation of the corresponding Title V permit into which the applicable emission standard or limitation has been incorporated.

90.  Each violation of a Title V permit is a violation of the Act.

91.  Absent an appropriate order of this Court, Chevron Phillips will continue to violate its Title V permits at the Cedar Bayou Plant.

92. As provided by sections 113(e) and 304(a) of the Act, 42 U.S.C. §§ 7413(e) and 7604(a), the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, and 40 C.F.R. § 19.4, the violations describe above subject Chevron Phillips to injunctive relief and civil penalties of up to $32,500.00 per day for each violation of the Act ($37,500.00 as of January 12, 2009).

## PRAYER FOR RELIEF

WHEREFORE, based upon all the allegations contained in paragraphs 1 through 92, above, Plaintiffs request that this Court:

1. Declare Chevron Phillips to have violated and to be in continuing violation of the Act;

2. Permanently enjoin Chevron Phillips from operating all stationary sources of air pollutants at the Cedar Bayou Plant except in accordance with the Clean Air Act and any applicable regulatory requirements;

3. Order Chevron Philips to take appropriate actions to remedy, mitigate, or offset the harm to public health and the environment caused by the violations of the Act alleged above;

4. Assess a civil penalty against Chevron Phillips of up to $32,500.00 per day for each violation of the Act and applicable regulations occurring on and after June 12, 2004 ($37,500.00 per day for each violation of the Act and applicable regulations occurring on and after January 12, 2009), as provided by 42 U.S.C. §§ 7413(e) and 7604(a) and (g);

5. Order defendants to pay reasonable attorneys fees and costs (including expert witness fees), as provided by 42 U.S.C. § 7604(d);

6.  Grant such other relief as the Court deems just and proper.

Dated:  August 19, 2009

Respectfully submitted,

*/s/ Philip J. Hilder*
Philip J. Hilder
State Bar No. 09620050
Southern District of Texas Bar No. 2474
Hilder & Associates, P.C.
819 Lovett Blvd.
Houston, Texas  77006-3905
(713) 655-9111 (phone)
(713) 655-9112 (fax)
ATTORNEY-IN-CHARGE
FOR PLAINTIFFS

*/s/ David A. Nicholas*
David A. Nicholas
Southern District of Texas Bar No. 896677
20 Whitney Road
Newton, Massachusetts  02460
(617) 964-1548 (phone)
(617) 663-6233 (fax)

*/s/ Joshua R. Kratka*
Joshua R. Kratka
Southern District of Texas Bar No. 962922
National Environmental Law Center
44 Winter Street,  4th Floor
Boston, Massachusetts  02108
(617) 747-4333 (phone)
(617) 292-8057 (fax)

Counsel for Plaintiffs